**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

    **v.**                               **Case No. 8:25-cr-469-KKM-NHA**

**SERGIO TARANGO- DIAZ.**

_____/

## SENTENCING MEMORANDUM IN SUPPORT OF
## A DOWNWARD VARIANCE

Sergio Tarango Diaz respectfully requests that the Court impose a sentence of 18 months' imprisonment. That sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a).

The Presentence Investigation Report calculates a total offense level of 19 and a Criminal History Category of I, producing an advisory range of 30 to 37 months. PSR ¶¶ 33, 38, 62. Mr. Tarango Diaz no longer challenges the base offense level in paragraph 24 or the two-level specific-offense-characteristic increase under U.S.S.G. § 2K2.1(b)(6)(A) in paragraph 25. He maintains, however, his objection to the two-level aggravating-role adjustment under U.S.S.G. § 3B1.1(c). The evidence establishes cooperation among three relatives; it does not establish that Mr. Tarango Diaz exercised managerial or supervisory authority over either of the other participants.

If the Court sustains that objection, Mr. Tarango Diaz's total offense level is 17. With Criminal History Category I, the resulting advisory range is 24 to 30 months. Mr. Tarango Diaz then asks the Court to vary downward under § 3553(a) by the equivalent of two additional offense levels based principally on his youth, his minimal criminal history, his personal and educational background, his mental-health history, and his demonstrated ability to maintain lawful employment. A variance of that magnitude places the requested sentence within the 18-to-24-month range associated with offense level 15 and Criminal History Category I. Mr. Tarango Diaz asks the Court to impose the low end: 18 months.

That sentence recognizes the seriousness of trafficking in machinegun conversion devices. It also recognizes the individual who is being sentenced: a 21-year-old with no adult criminal convictions, a single criminal-history point arising from conduct at age 17, limited education and a history of learning and behavioral difficulties, a documented history of legitimate manual labor, and realistic vocational goals upon his return to the community.

## I. THE TWO-LEVEL AGGRAVATING-ROLE ADJUSTMENT SHOULD NOT APPLY.

The PSR adds two levels under § 3B1.1(c) because it concludes that Mr. Tarango Diaz "managed his co-defendant, who drove them to the post office, and the juvenile, who entered the post office to pick up the MCDs." PSR ¶ 27.

The Addendum similarly reasons that Mr. Tarango Diaz "recruited" Alvarez Diaz to drive him and the juvenile to retrieve the package.

The underlying facts establish coordination. They do not establish management.

Section 3B1.1(c) applies when the defendant was an "organizer, leader, manager, or supervisor" of criminal activity not covered by subsections (a) or (b). To qualify, the defendant must have organized, led, managed, or supervised at least one other participant. U.S.S.G. § 3B1.1(c), cmt. n.2. Relevant considerations include decision-making authority, recruitment of accomplices, entitlement to a greater share of criminal proceeds, participation in planning, the scope of the activity, and the degree of control or authority exercised over others. *Id.* cmt. n.4.

When a defendant disputes the factual basis for an enhancement, the Government bears the burden of proving the disputed facts by a preponderance of reliable and specific evidence. *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017); *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009). And § 3B1.1 requires management or supervision of another participant, rather than merely management of property or coordination of criminal activity. *See United States v. Glover*, 179 F.3d 1300, 1302–03 (11th Cir. 1999).

In *Martinez*, the Eleventh Circuit emphasized the distinction between

organizing criminal activity and exercising authority over the people participating in it. 584 F.3d at 1026–28. Evidence that participants acted together, even where the defendant played an important part in planning or coordinating what occurred, does not eliminate the requirement that the Government establish the requisite authority, influence, or control over another participant. *Id*.

That distinction controls the issue here.

### A. Asking Alvarez Diaz for a ride did not make Mr. Tarango Diaz his manager or supervisor.

According to the PSR, Alvarez Diaz owned and drove the vehicle used to travel to the post office. PSR ¶¶ 12, 14. Alvarez Diaz told investigators that Mr. Tarango Diaz asked him for a ride and said that he would pay Alvarez Diaz for providing it. PSR ¶ 16.

That establishes an agreement concerning transportation. It does not establish a superior-subordinate relationship.

Alvarez Diaz was not a person with no independent familiarity with firearms who simply followed Mr. Tarango Diaz's commands. The PSR reports that Alvarez Diaz had separately accepted money from another person to order a gun part, had previously bought and sold an AR-15, and appeared in a video manipulating a Glock switch installed on a pistol. PSR ¶ 16. The PSR also reports firearms-related communications between Alvarez Diaz and Mr.

Tarango Diaz dating to 2023 and 2024. PSR ¶ 18.

Those circumstances are significant because they describe Alvarez Diaz as an independently acting participant with his own knowledge, experience, and judgment—not as an employee or subordinate whose conduct Mr. Tarango Diaz controlled.

There is no evidence that Mr. Tarango Diaz could compel Alvarez Diaz to participate, controlled his independent decisions, determined the scope of his involvement, disciplined him, or exercised continuing authority over him. Nor is there evidence that Mr. Tarango Diaz claimed a larger share of criminal proceeds by virtue of some leadership position. The fact that Mr. Tarango Diaz asked his cousin for transportation, even coupled with an offer to compensate him for the ride, does not establish that Mr. Tarango Diaz "managed" the owner and driver of the vehicle.

### B. The juvenile's retrieval of the package likewise establishes coordination, not supervision.

The juvenile was also a cousin of both Mr. Tarango Diaz and Alvarez Diaz. PSR ¶ 12. He entered the post office while Alvarez Diaz and Mr. Tarango Diaz remained in the vehicle. PSR ¶¶ 12–13. The juvenile communicated with Mr. Tarango Diaz while inside and sent messages expressing fear while waiting for the package. PSR ¶ 15. The juvenile did not provide investigators with a post-Miranda statement. PSR ¶ 19.

Those facts establish that the juvenile performed a particular task. They do not establish why he agreed to perform it or that Mr. Tarango Diaz possessed managerial authority over him.

The record does not identify evidence that Mr. Tarango Diaz could compel the juvenile's participation, controlled his independent decisions, established compensation for him, disciplined him, or possessed any continuing authority over him. Nor does it establish that Mr. Tarango Diaz recruited the juvenile into an ongoing organization rather than asking a relative who was already with the group to perform a particular task.

The defense does not suggest that family members can never exercise criminal authority over one another. But the familial relationship matters when evaluating what can reasonably be inferred from an ordinary request between participants. Here, all three individuals were relatives. PSR ¶ 12. In the absence of evidence of commands, coercion, an established hierarchy, control over compensation, or some recognized authority to direct another participant's conduct, requests among relatives are at least as consistent with voluntary joint participation as with a managerial relationship.

The Government must prove the latter.

### C. Being more involved in the pickup is not the same as managing the other participants.

The evidence may establish that Mr. Tarango Diaz knew more about the

package than the other occupants and provided information needed to retrieve it. That can establish greater involvement in the offense. It does not automatically establish management of another person.

Section 3B1.1(c) does not enhance every defendant who plays the most significant role among a small group of participants. It enhances a defendant who acts as an organizer, leader, manager, or supervisor of another participant. U.S.S.G. § 3B1.1(c), cmt. n.2.

Here, the PSR identifies the tasks performed by each participant: Alvarez Diaz drove, the juvenile entered the post office, and Mr. Tarango Diaz remained in the vehicle after arranging to receive the package. PSR ¶¶ 11–16. What is missing is evidence establishing a hierarchy among them.

The distinction is particularly important in a small, informal undertaking among relatives. A division of tasks is necessary whenever multiple people act together. If assigning or requesting a task, standing alone, were enough to constitute management, § 3B1.1(c)'s requirement of supervisory authority would add little to the fact of conspiracy itself.

The Government must establish more than joint action and coordination. On this record, it has not established by a preponderance of reliable and specific evidence that Mr. Tarango Diaz exercised the authority, control, or influence over another participant necessary for § 3B1.1(c).

The Court should sustain the objection to paragraph 27. The resulting

total offense level is 17 and, with Criminal History Category I, the advisory range is 24 to 30 months.

## II. THE § 3553(a) FACTORS SUPPORT A VARIANCE EQUIVALENT TO TWO OFFENSE LEVELS.

After correctly calculating the advisory range, the Court must determine the sentence that is sufficient, but not greater than necessary, to fulfill the purposes identified in § 3553(a). See *United States v. Booker*, 543 U.S. 220, 245–46 (2005); *Gall v. United States*, 552 U.S. 38, 49–50 (2007).

Here, the defense requests a modest variance equivalent to two offense levels. The requested variance is not intended to recalculate the Guidelines. Rather, offense level 15 provides a useful benchmark for the extent of the requested variance: at Criminal History Category I, it corresponds to an imprisonment range of 18 to 24 months. Mr. Tarango Diaz asks for the bottom of that range.

His youth, extremely limited criminal history, personal background, education and mental-health history, and demonstrated capacity for lawful employment collectively justify that variance.

### A. Mr. Tarango Diaz has a minimal criminal history

Mr. Tarango Diaz is 21 years old. PSR ¶ 42. He has no adult criminal convictions. PSR ¶ 36. His sole criminal-history point arises from juvenile conduct committed when he was 17. PSR ¶¶ 35, 37–38. The PSR identifies no

pending charges and no other arrests. PSR ¶¶ 40–41.

Mr. Tarango Diaz therefore falls within Criminal History Category I. PSR ¶ 38. But even Category I does not fully convey how limited his record is: he reaches sentencing at age 21 without a single adult conviction and without ever having served an adult prison sentence.

The defense does not ask the Court to disregard the juvenile conduct. It is properly before the Court and is reflected in his criminal-history score. But it remains significant under § 3553(a)(1) that the conduct occurred during adolescence and that Mr. Tarango Diaz has not accumulated the repeated adult convictions that often accompany defendants facing federal imprisonment.

An 18-month federal prison sentence is a substantial sanction for a 21-year-old with this record. A longer term is not necessary to communicate the seriousness of the offense or the consequences of future criminal conduct.

### B. His upbringing and educational history provide important context for a young man who still has substantial capacity to build a lawful adult life.

Mr. Tarango Diaz was born when his mother was only 17 years old. PSR ¶ 42. He described being raised principally by his mother and reported that his father was not substantially involved in his childhood. His mother recalled that his father had some weekend contact with the children but provided no financial assistance. PSR ¶ 43. Under either account, Mr. Tarango Diaz's

mother carried the principal responsibility for raising him.

His mother worked double shifts as a home-health aide, and Mr. Tarango Diaz and his siblings were frequently left without an adult at home. PSR ¶ 43. He does not claim that he lacked basic necessities or suffered physical abuse. PSR ¶ 43. His childhood nevertheless lacked consistent parental structure at important points in his development.

That instability was accompanied by educational difficulties. His mother reported that he had a learning disability and an individualized education plan during elementary school. PSR ¶ 54. After behavioral problems resulted in his placement in alternative schools, she reported that he no longer received an IEP. PSR ¶ 54. He ultimately left school at 16 and never obtained a high-school diploma or GED. PSR ¶ 54.

These circumstances do not excuse his offense. However, they should be viewed in the light of evaluating a defendant who committed this offense at a very young age and who has not yet established a mature adult history of repeated criminal conduct.

They also identify concrete areas in which supervision and programming can reduce his risk of returning to court. Mr. Tarango Diaz wants to obtain his GED and has expressed interest in welding, HVAC, and electrical training. PSR ¶ 55. Those are practical goals tied directly to the type of work he has previously performed.

### C. *The mental-health record reflects longstanding behavioral and treatment needs.*

Mr. Tarango Diaz reported that he was diagnosed with bipolar disorder at approximately age 15 and took medication for roughly two years before discontinuing it because it made him drowsy. PSR ¶ 49. His mother separately reported behavioral difficulties beginning in elementary school, treatment by a therapist and psychiatrist, and medication with Abilify. PSR ¶ 49.

The defense recognizes that the record is not uniform. During a November 2025 evaluation at Sober Solutions, Mr. Tarango Diaz denied mental-health issues and received no mental-health diagnosis. PSR ¶ 49. That denial must be understood in context: individuals with a history of psychiatric treatment and diagnoses often minimize or reject such history in clinical or correctional settings due to stigma, shame, or concern about how mental-health disclosures may be perceived. Here, the earlier records reflecting a bipolar diagnosis and adolescent treatment are not negated by a later denial, but rather reflect the well-documented inconsistency that can arise when a defendant is asked to self-report sensitive mental-health history in a forensic setting. The defense therefore does not ask the Court to make a medical finding that the existing records do not support.

The pertinent point is narrower. Mr. Tarango Diaz has a longstanding history of behavioral and mental-health concerns, prior psychiatric medication,

educational difficulties, and treatment involvement. In context, his denial of mental-health issues during evaluation is best understood as reflecting the stigma he associates with a bipolar diagnosis and a reluctance to acknowledge it openly, rather than the absence of underlying symptoms. That stigma has contributed to inconsistent engagement with treatment in the past. He has also told Probation that he believes mental-health treatment could benefit him. PSR ¶ 49. Those circumstances favor a sentence that combines meaningful punishment with structured treatment and supervision, ensuring he receives consistent psychiatric care that can address his needs more effectively than he has been able to do on his own.

### D. His substance-use issues reflect underlying treatment needs that are best addressed through supervision, not additional incarceration

Mr. Tarango Diaz's performance on pretrial release was not perfect, and the defense does not suggest otherwise. He continued using marijuana despite repeated instructions to stop, and his bond was ultimately revoked. PSR ¶¶ 5–7, 51–53.

It is relevant that Mr. Tarango Diaz reported beginning regular marijuana use at approximately age 14. PSR ¶ 51. While on supervision, he participated in substance-abuse counseling through Sober Solutions until his bond was revoked. PSR ¶ 53. His release violations involved continued marijuana use, not a new violent offense or a new allegation of firearms

trafficking.

Viewed in context, the record supports the inference that his substance use has functioned, at least in part, as a form of self-medication tied to his mental-health history described above, rather than purely recreational or criminally motivated conduct. That does not excuse the violations, but it is relevant to treatment planning and to the Court's assessment of the most effective way to reduce recidivism.

The appropriate response can therefore include integrated mental-health and substance-use treatment, along with testing and supervision during supervised release. An 18-month sentence acknowledges his failure on bond while still recognizing that a longer prison sentence is not the only tool available to address the underlying issues that contributed to those violations.

### E. Mr. Tarango Diaz has demonstrated the ability to earn a lawful living.

Despite his limited formal education, Mr. Tarango Diaz has a meaningful history of legitimate manual labor.

He reported working as a pipe layer for Ripa Construction from 2022 through 2024. PSR ¶ 59. He later worked full time for Nations Roofing as a member of his grandfather's crew. PSR ¶ 57. In 2025, he also performed labor for his uncle. PSR ¶ 58.

Those jobs are important because they demonstrate that Mr. Tarango

Diaz has already functioned in the legitimate workforce despite leaving school at 16. His stated interest in welding, HVAC, and electrical work builds naturally on that experience. PSR ¶ 55.

This is not a defendant for whom lawful employment is hypothetical. He has worked before, has marketable experience in construction and roofing, and has identified additional vocational skills he wants to acquire. Those circumstances provide a realistic foundation for reentry and support the conclusion that a lengthy period of incarceration is unnecessary to protect the public.

### F. Eighteen months adequately reflects the seriousness of the offense.

The defense recognizes that the offense itself is serious. The package Mr. Tarango Diaz sought to receive contained two machinegun conversion devices capable of converting semiautomatic firearms into machineguns. PSR ¶¶ 8–13. Congress has treated trafficking in firearms as a serious felony, and this Court should impose meaningful punishment.

Mr. Tarango Diaz is not requesting probation or a noncustodial sentence. He is requesting 18 months in federal prison, followed by supervised release and the conditions the Court considers appropriate.

He also pleaded guilty in a timely manner without requiring a trial and received the full three-level reduction for acceptance of responsibility. PSR ¶¶ 22, 31–32. His guilty plea does not erase what occurred, but it reflects

acceptance of legal responsibility for it.

An 18-month prison sentence is substantial when imposed on a 21-year-old who has never before been convicted of an adult offense or served an adult prison sentence. It removes him from his family and community, subjects him to the consequences of federal incarceration, and will be followed by felony supervision. At the same time, it allows him to return to the community while still young enough to obtain his GED, pursue vocational training, resume lawful employment, and address his substance-use and mental-health needs.

The additional months produced by the 24-to-30-month advisory range would add punishment. On this record, they are not necessary to accomplish the statutory purposes of punishment, deterrence, protection of the public, and rehabilitation.

## III. THE COURT SHOULD IMPOSE 18 MONTHS' IMPRISONMENT

Mr. Tarango Diaz respectfully requests a sentence of 18 months' imprisonment, followed by an appropriate term of supervised release. That sentence is sufficient, but not greater than necessary, to satisfy the purposes of 18 U.S.C. § 3553(a).

First, the aggravating-role enhancement under U.S.S.G. § 3B1.1(c) should not apply because the record shows coordination among relatives, not a hierarchy, and there is no reliable evidence that Mr. Tarango Diaz exercised decision-making authority, control, or supervisory power over Alvarez Diaz or

the juvenile cousin.

Second, even if the Court sustains the Guidelines calculation at offense level 17, a downward variance is warranted under § 3553(a) because Mr. Tarango Diaz is only 21 years old, has no adult criminal convictions, and has a single criminal-history point from juvenile conduct, all in the context of a highly unstable upbringing and documented educational challenges.

Third, a sentence of 18 months appropriately reflects the nature of the offense and his personal characteristics without over-punishment because, although the conduct was serious, Mr. Tarango Diaz accepted responsibility, has a history of lawful employment, and has concrete plans for vocational training, rehabilitation, and treatment addressing his mental-health and substance-use issues.

For these reasons, Mr. Tarango Diaz respectfully requests that the Court impose a sentence of 18 months' imprisonment, which is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment while avoiding a sentence greater than necessary.

DATED this 10th day of August 2026.

Respectfully submitted,

CHARLES L. PRITCHARD, JR.
FEDERAL PUBLIC DEFENDER

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.

Assistant Federal Defender
Florida Bar No. 117534
400 North Tampa St. Suite 2700
Tampa, FL 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: ryan_maguire@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of August 2026, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Emmet Jackson Boggs, Jr., AUSA

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.
Assistant Federal Defender
